POSTED ON WEB SITE



FILED

JAN 19 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )        Case No. 05-13913-B-13
                                         )
                                         )
Cynthia M. Roberts,                      )        DC No. DBR-1
                                         )
                Debtor.                  )
_____)

**MEMORANDUM DECISION REGARDING OBJECTION
TO CLAIMS OF EXEMPTION**

Henry D. Nunez, Esq., appeared on behalf of the debtor, Cynthia M. Roberts (the "Debtor").

David B. Rao, Esq., of Binder & Malter, LLP, appeared telephonically on behalf of creditor, PET Imaging of San Jose, LLC ("PET Imaging").

M. Nelson Enmark, Esq. appeared as the chapter 13 trustee (the "Trustee").

        In this contested matter, the court is asked to consider the effect of a ruling, entered in the course of pre-petition litigation in the State court, on the Debtor's right to claim a homestead exemption in this bankruptcy proceeding. PET Imaging's Objection to Claim of Entitlement to a Homestead Exemption (the "Objection") and Debtor's opposition thereto were argued before this court on December 14, 2005. The court gave the Debtor an opportunity to file a supplemental brief and took the matter under submission effective December 28, 2005. For the reasons set forth below, PET Imaging's Objection will be sustained.

        The bankruptcy court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 522. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O). This Memorandum Decision contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

99

Case 05-13913    Filed 01/19/06    Doc 99

**Findings of Fact**.

The Debtor was employed by PET Imaging as the office manager and bookkeeper for about two years prior to March 2003. The Debtor's employment terminated after she embezzled a substantial sum of money from PET Imaging. On March 17, 2003, PET Imaging filed a civil complaint against the Debtor in the Santa Clara County Superior Court (the "Santa Clara Litigation"). On March 18, 2003, that court issued a writ of attachment in favor of PET Imaging against the Debtor's assets.

The Debtor was also charged criminally for violations of the State's Penal Code. The Debtor was convicted of felony theft and forgery in June 2003, and served time in the State prison from October 2003 until April 1, 2005. She was also ordered to pay restitution to PET Imaging in the amount of $389,207.88 (the "Restitution Award").

On August 7, 2003, the Debtor stipulated to entry of a judgment in favor of PET Imaging in the Santa Clara Litigation, based on the Restitution Award, in the amount of $383,152,88 (the "Civil Judgment"). On December 12, 2003, PET Imaging recorded an Abstract of Judgment against the Debtor in Madera County where the Debtor held an interest in real property located at 500 Shannon Road (the "Shannon Road Property"). On March 10, 2004, the Debtor executed a "Gift Grant Deed" conveying her interest in the Shannon Road Property to family members Aaron Roberts and Joyce Coria. On August 10, 2004, PET Imaging recorded a writ of execution against the Shannon Road Property. On August 26, 2004, PET Imaging filed a complaint in the Madera County Superior Court (case #MCV 024329) against the Debtor, Aaron Roberts and Joyce Coria to avoid the transfer of the Shannon Road Property (the "First Madera Litigation").

On September 27, 2004, PET Imaging filed another action in the Madera County Superior Court (case #MCV 024628) to have the Shannon Road Property sold in satisfaction of the Civil Judgment (the "Second Madera Litigation"). At that time, the Debtor was still incarcerated, but the Debtor's criminal attorney, Nelson Chase, Esq., appeared at three hearings in the Second Madera Litigation. The Debtor contends that Mr. Chase was not retained or authorized to represent her in the civil proceedings. The

2

Debtor did not otherwise appear in or oppose the Second Madera Litigation.

On March 11, 2005, after a hearing, an order was entered in the Second Madera Litigation granting PET Imaging's motion to have the Shannon Road Property sold in partial satisfaction of the Civil Judgment (the "Sale Order"). The Debtor did not appear at the hearing on that matter. Pursuant to the Cal.CodeCiv.P. § 704.740(a),[1] the Madera Court also determined the Debtor's right to an exemption under CCP § 704.710, et.seq. at the time it authorized a judicial sale of the Shannon Road Property. The Sale Order includes the following finding with regard to a homestead exemption:

> The court finds that Defendant Cynthia Roberts is not entitled to a homestead exemption as she fails to meet the criteria set forth in Code of Civil Procedure Section 704.710(c).

On May 16, 2005, before the Shannon Road Property could be sold, the Debtor filed for relief under chapter 13 of the Bankruptcy Code. At that time, the Debtor had paid nothing on her liability to PET Imaging. On her Schedule C, the Debtor claimed a "declared homestead" exemption in the Shannon Road Property, in the amount of $50,000, under Cal.CodeCiv.P. § 704.910, et.seq. She also claimed the "automatic homestead" exemption in the amount of $0.00 under CCP § 704.710, et.seq. Debtor converted her bankruptcy case to chapter 7 on July 12, 2005. PET Imaging timely filed its Objection on September 9, 2005.

**Issues.**

PET Imaging argues in support of its Objection, *inter alia*, that the Debtor is not entitled to exempt the Shannon Road Property in this bankruptcy case for all of the reasons argued against the exemption, and in support of the Sale Order, in the Second

---

[1]CCP § 704.740 provides in pertinent part:

General Requirements for Sale of Dwelling.

> (a) Except as provided in subdivision (b), the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article *and the dwelling exemption shall be determined under this article.* (emphasis added.)

3

1  Madera Litigation.  PET Imaging also contends that the State court has already made a

2  determination that the Debtor is not entitled to an exemption under CCP § 704.710,

3  et.seq.

4          At the hearing on the Objection, the Debtor acknowledged, through her attorney,

5  that she never recorded a Declaration of Homestead against the Shannon Road Property.

6  She is therefore not entitled to an exemption under CCP § 704.910, which only applies to

7  "declared" homesteads.  Since the only exemption of any dollar value was claimed under

8  § 704.910, that technically should be the end of the court's inquiry.  However, the Debtor

9  could simply amend her exemption schedule to shift the $50,000 exemption to CCP §

10 704.710 and the parties would be back in this court arguing exactly the same issues.  For

11 that reason, the court will rule on PET Imaging's Objection as if the schedules had been

12 so amended.

13         This dispute focuses on the Debtor's right to claim a $50,000 homestead

14 exemption under CCP § 704.710, et.seq.[2] The Debtor contends that this court is not

15 bound by the Sale Order because she was incarcerated at the time and unable to oppose

16 any proceedings in the Second Madera Litigation.  The Debtor contends that this court

17 should therefore decide the merits of her homestead exemption claim *de novo*.

18 **Analysis and Conclusions of Law.**

19 **Application of the Rooker-Feldman Doctrine.**

20         PET Imaging contends that the Rooker-Feldman Doctrine requires this court to

21 give effect to the Sale Order.  The Debtor argues that Rooker-Feldman does not apply

22

23

24 ────────────────

    [2]This dispute is not about saving the Shannon Road Property.  The court

25 assumes that the Debtor will move to avoid the judicial lien securing PET Imaging's
   Civil Judgment under 11 U.S.C. § 522(f) if the homestead exemption were upheld.

26 However, the record suggests that the Shannon Road Property has value in excess of the
   unavoidable liens and the claimed exemption, which would be available to partially

27 satisfy the Civil Judgment, even with the homestead exemption.  On January 10, 2006,
   this court approved a stipulation of the parties which modifies the automatic stay to

28 permit PET Imaging to move forward in the State court with a judicial sale of the
   Shannon Road Property.  The parties agreed that $50,000 of the sale proceeds shall be
   reserved to pay Debtor's exemption, subject to final resolution of the exemption dispute.

because (1) this court has concurrent jurisdiction to decide the exemption issue, (2) the exemption issue was not germane to the Sale Order, and (3) the Debtor was incarcerated and unavailable to oppose the proceedings in the Second Madera Litigation. The court agrees with the Debtor regarding application of the Rooker-Feldman Doctrine, but disagrees with most of her reasoning.

The Rooker-Feldman Doctrine only applies when the losing party in a state court proceeding files a new proceeding in the federal court to, in essence, appeal the state court's ruling. *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, __ U.S. __, 125 S.Ct. 1517, 1521-22, 161 L.Ed. 2d 454 (2005). Rooker-Feldman relates to the federal court's jurisdiction, it prohibits the lower federal court from acting as a court of appeals over the State courts: only the U.S. Supreme Court has jurisdiction to "reverse or modify" a state court judgment. *Id.* at 1522 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149 (1923)). This is not a Rooker-Feldman case because (1) the bankruptcy court has original and concurrent jurisdiction with the State court to decide exemption disputes, and (2) the Debtor is not asking this court to reverse or modify the State court's Sale Order. Indeed, the Debtor is simply asking this court to completely ignore the Sale Order and decide the exemption issue *de novo*, as if the Second Madera Litigation never took place and the Sale Order did not exist. That argument invokes other preclusion doctrines that allow federal courts to act in deference to State-court actions, but not Rooker-Feldman.

**Application of the Full Faith and Credit Act.**

The exemptions prescribed in the Bankruptcy Code at 11 U.S.C. § 522(d) protect the debtor and the debtor's dependents by helping them to preserve some interest in their home and personal property. However, the Bankruptcy Code allows each state to "opt out" of the federal exemptions and substitute its own exemptions for the ones specified in section 522(d). In opt-out states, state law governs the availability of exemptions. *In re Sanders*, 39 F.3d 258, 260 (10th Cir. 1994). California is an "opt-out" state. Therefore, in California, debtors are limited to the exemptions available to them under California law.

5

The bankruptcy court is guided here not by the Rooker-Feldman Doctrine, but by the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires the federal court to "give the state-court judgment . . . the same preclusive effect it would have had in another court of the same State." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct.768, 88 L.Ed.2d 877 (1986).

Article IV, section 1 of the U.S. Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. Congress codified the full faith and credit clause in 28 U.S.C. § 1738 which states in part:

> [R]ecords and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

Federal jurisdiction over an issue for which it has concurrent jurisdiction with the State court does not terminate because the State court has already ruled on the issue, but "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment . . . ." *Exxon Mobil Corp.*, 125 S.Ct. at 1527.

The federal court's power to relitigate issues already disposed of in the state court was discussed by the Supreme Court in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), reh'g denied, 471 U.S. 1062, 105 S.Ct 2127 (1985). In *Marrese*, the Supreme Court held that the full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered."

The bankruptcy court is presented here with an order of the State court, the Sale Order, which states clearly and unambiguously that the Debtor is not entitled to a homestead exemption of the kind defined in CCP § 704.710(c). Whether that Order was entered by default or not, the Debtor makes no showing that it would not be honored by every other court in the State. Certainly it will be followed by the court that issued the Sale Order in Madera County where the Shannon Road Property is located and where PET Imaging's judicial foreclosure proceeding is venued.

The Debtor is, in essence, asking this court to treat the Sale Order as being null

and void.  However, the Debtor makes no showing that the State court did not act within its jurisdiction.  As the *Exxon* court noted, if the State court's decision was wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Id.* at 1522 quoting *Rooker*, 263 U.S. at 415.  If the State court entered the Sale Order in error, then the Debtor has had over nine months to seek reversal or modification of the Sale Order in an appropriate proceeding.  She has not done so.

**Application of Collateral Estoppel.**

PET Imaging contends that the doctrine of collateral estoppel also precludes this court from relitigating the findings of fact and conclusions of law on the exemption issue addressed in the Sale Order.  The Debtor disagrees: she argues that collateral estoppel cannot apply here solely because she was unavailable to oppose the proceedings in the Second Madera Litigation and the Sale Order was entered by default.  The Debtor misconstrues the collateral estoppel doctrine.

Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation.  *See R.T.C. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).  Collateral estoppel is closely related to the doctrine of res judicata, or claim preclusion, which operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.  *See Kelly v. Vons Cos.*, 67 Cal. App. 4th 1329, 1335, 79 Cal. Rptr. 2d 763, 766 (Ct. App. 1998).

"Mutual" collateral estoppel involves subsequent litigation between the same parties or their privies.  It has the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

Collateral estoppel applies in bankruptcy proceedings.  *See Grogan v. Garner*, 498 U.S. 279, 284 & n.11 (1991).  (Collateral estoppel applied in a dischargeability proceeding.)  Under the federal Full Faith and Credit statute, federal courts must give

7

state court judgments the same preclusive effect that those judgments would receive from another court of the same state. 28 U.S.C. 1738. California law thus determines the preclusive effect which this court must give to the findings of fact and conclusions of law in the Sale Order.

California courts will apply collateral estoppel only if certain requirements have been met, and then only if application of issue preclusion furthers the public policies underlying the doctrine. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Lucido v. Superior. Ct.*, 51 Cal.3d 335, 341, 272 Cal. Rptr. 767 (1990)).

There are five threshold requirements which must be established before collateral estoppel will apply:

First, the issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding.

Second, this issue must have been *actually litigated* in the former proceeding.

Third, it must have been *necessarily decided* in the former proceeding.

Fourth, the decision in the former proceeding must be *final and on the merits*.

Fifth, the party against whom preclusion is sought must be the *same party* as, or in privity with, the party to the former proceeding.

*Lucido*, 51 Cal. 3d. at 341.

The public policies underlying collateral estoppel are (1) the preservation of the integrity of the judicial system, (2) promotion of judicial economy, and (3) the protection of litigants from harassment by vexatious litigation. *Id.* at 343.

When a state-court judgment is entered by default, California law places two additional limitations on the application of collateral estoppel. First, the record must show that the defendant "has been personally served with summons or has actual knowledge of the existence of the litigation" and a "full and fair opportunity to litigate." *In re Cantrell*, 329 F.3d at 1124 (quoting *Williams v. Williams (In re Williams' Estate*, 36 Cal.2d. 289 (1950)).

Second, the record must show that the default ruling is based on an "express

8

1   finding upon the allegation for which preclusion is sought." *Id.*  In that regard, the

2   "express finding" requirement for a default judgment is closely tied to the "actually

3   litigated" and "necessarily decided" requirements (the second and third elements)

4   applicable to collateral estoppel in general.  The "actually litigated" element applies in the

5   context of a default judgment "'only where the record shows an express finding upon the

6   allegation'" for which issue preclusion is sought.  *Cal-Micro, Inc. v. Cantrell (In re*

7   *Cantrell)*, 329 F.3d 1119, 1124 (9th Cir. 2003), citing *Williams v. Williams (In re*

8   *Williams' Estate)*, 36 Cal. 2d, 289, 297 (1950).  However, the "express finding"

9   requirement can be waived if the court in the prior proceeding necessarily decided the

10  issue.  *Cantrell*, 329 F.3d at 1124, citing *In re Harmon*, 250 F.3d at 1248.  In such

11  circumstances, an express finding is not required "if an issue was necessarily decided in a

12  prior proceeding, it was actually litigated." *Id.*

13      This court must scrutinize each of the five elements of collateral estoppel to

14  determine what issues, if any, have been decided in the Sale Order.  There is no dispute

15  concerning the first, fourth and fifth elements.  The disputed issue, the Debtor's right to

16  claim the homestead exemption defined in CCP § 704.710(c), is identical in both

17  proceedings.  PET Imaging and the Debtor were the same parties in the Second Madera

18  Litigation, and the Sale Order appears to be final on the merits because the Debtor has

19  never appealed or successfully modified it.  That leaves only the second and third

20  elements for the court to review.  Since the Sale Order was entered by default, the court

21  must also consider whether the "knowledge/full and fair opportunity to litigate"

22  requirement has been satisfied.

23      It appears from the record that the homestead exemption issue was actually

24  litigated by the Madera court because the Sale Order includes an express finding of fact

25  on that same issue.  Under CCP § 704.740(a), the State court was required to adjudicate

26  the Debtor's homestead exemption rights in conjunction with a proceeding to sell the

27  Shannon Road Property, so this court must also conclude that the homestead exemption

28  issue was necessarily litigated.

9

1    The "full and fair opportunity to litigate" requirement was also satisfied here, even

2    though the Debtor was incarcerated at the time of the hearings in the Second Madera

3    Litigation. The appearance by, and disputed authorization of Debtor's criminal counsel,

4    Nelson Chase, Esq., is irrelevant to this analysis. The outcome will be the same even if

5    Mr. Chase had not appeared at all. Under Cal.CodeCiv.P § 473.5, the Debtor has up to

6    two years to bring a motion in the State court to set aside the Sale Order if she was not

7    properly served with the summons and complaint in the Second Madera Litigation.

8    Under CCP § 473(b), the Debtor had up to six months to seek relief from the Sale Order

9    if it was entered against her as a result of mistake, inadvertence, surprise, or excusable

10   neglect.[3]

11   The disputed Sale Order was entered on March 11, 2005. The Debtor was

12   released from incarceration three weeks later on April 1, 2005. The Debtor makes no

13   showing that she did not have actual knowledge of the Second Madera Litigation, and the

14   Sale Order, within the time limits prescribed to seek relief under both CCP §§ 473.5 and

15   473(b). When a defendant has actual knowledge of an adverse state-court default

16   judgment within the time allowed to bring a motion under State law to vacate the

17   judgment, and fails to do so, the court can find and conclude that the defendant had a full

18   and fair opportunity to litigate the State court default judgment. *Cantrell*, 329 F.3d at

19   1124.

20   **Conclusion.**

21   California law defines the extent of any exemption claimed under State law in this

22   bankruptcy proceeding. The Debtor acknowledged on the record that she did not qualify

23   for the "declared homestead" exemption under CCP § 704.790. The State court has

24   already ruled that the Debtor is not entitled to the "automatic homestead" exemption that

25   she would claim by amendment under CCP § 704.710, et.seq. Under the Full Faith and

26

27
_____
28   [3]Under the Bankruptcy Code, 11 U.S.C. § 108(c), those time limits may be
     subject to extension, but that issue is not before the court.

                                10

Credit Act, 28 U.S.C. § 1738, and the doctrine of collateral estoppel, this court is bound

by that ruling. Accordingly, PET Imaging's objection to the Debtor's exemptions under

both CCP §§ 704.710, et.seq. and 704.790, et.seq. will be sustained.

Dated:    January _____ /9 ____, 2006


W. Richard Lee
United States Bankruptcy Judge

11

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.

DATED:  **JAN 19** 2006

By: _____
                        Deputy Clerk

EDC 3-070 (New 4/21/00)

Office of the US Trustee
1130 O St. Room 1110
Fresno, CA 93721

David Rao
2775 Park Ave
Santa Clara, CA 95050-8461

Henry Nunez
4478 W Spaatz *Ave*
Fresno, CA 93722

Cynthia Roberts
500 SHANNON AVE
MADERA, CA 93637

James Salven
PO Box 25970
Fresno, CA 93729